(No. 4167—

JACK LINTON, Claimant, vs. STATE OF ILLINOIS, Respondent.

*Opinion filed September 19, 1950.*

ALFRED H. WILLISTON AND CARL E. ABRAHAMSON, Attorneys for Claimant.

IVAN A. ELLIOTT, Attorney General; WILLIAM H. SUMPTER, Assistant Attorney General, for Respondent.

SCHUMAN, C. J.

Claimant, Jack Linton, was a passenger in an automobile driven by John Bigelow on November 29, 1947. Said automobile was being driven in a southerly direction upon and along United States Route No. 12, near the City of Des Plaines, Illinois, being one of the public highways under the jurisdiction of the State of Illinois, Department of Public Works and Buildings, the complaint alleges that at about 12:30 o'clock in the morning, said automobile struck the plow on a State truck, which State truck was parked on the left hand side of the highway with the plow extending about 4 feet into the westerly line of said highway.

The evidence showed that during the night it snowed, and that William Buelow, a highway maintenance patrolman, was called out on the night of November 28, 1947 to plow snow off the road, and to particularly cinder crossings and intersections because of the icy condition of the pavement.

The testimony showed that the truck had burned out a transmission, and that the driver, William Buelow, had attempted to cross the highway to park the truck, but did not clear the highway because the truck stopped. The truck was loaded with cinders, and at that time a man by the name of Walter J. Geudtner was maintenance helper on the truck with William Buelow. The evidence discloses that both Buelow and Geudtner left the truck, and went in opposite directions to seek help in order to have the truck towed in; and, that neither one remained with the truck to warn persons lawfully driving in and upon the highway.

While there is some dispute with reference to the lights on the truck, it can be concluded from the evidence that the headlights of the truck and the red flasher light on the top of the truck were working and visible. There is no testimony in the record, however, that the blade of the snow plow, which protruded some four feet into the highway, could be visible by the lights that were testified to. In fact, it was testified by witnesses for the respondent—that, if the snow plow was up, it would obstruct the headlights on the truck.

From the facts, it could be concluded that after 10 o'clock at night the weather had cleared, and the visibility was fairly good, but that the condition of the highway was icy.

The facts are undisputed that the highway truck was parked on the wrong side of the highway, and the reason for this was explained by the testimony of the operator of the truck and his helper, that the transmission had burned out, and the operator was seeking to get the truck across the highway into a gravel driveway.

It is the contention of the claimant that no flares were placed, which would produce a warning light visible for a distance of 500 feet, and further contended that when a truck is disabled at night, the operator is charged with the duty of placing one such warning light approximately 200 feet in advance of the vehicle, and one each at a distance of approximately 100 and 200 feet, respectively, to the rear of the vehicle. The facts are undisputed that there were no such flares in front or to the rear of the vehicle. It was explained by the respondent that they had flares of the type used by the railroads, but that the same had become wet by reason of the snow, and that they could not be lighted. There was no explanation why

other type flares were not carried to meet the emergency, which they should have known existed that night.

While it is true that a statutory violation does not constitute negligence per se, still if the claimant establishes that there has been a statutory violation it would make a prima facie case of negligence against the respondent. However, the evidence is undisputed that the plow of the truck extended some four feet into the highway. The Court's opinion is that the only conclusion that can be drawn from the evidence is that this created an exceedingly dangerous condition and should have been protected. The failure to have flares at the point mentioned or someone stationed at the truck to warn of this dangerous condition certainly constitutes negligence on the part of the respondent. It can be safely said that even though a person could have seen a flasher on the top of the truck, and the lights on the truck, there would be no indication that this did light up the unforeseen obstruction such as the plow.

The Court is familiar with the rules of law advanced by the respondent with reference to the violation of the statute as not being negligence per se; that it is not a statutory violation to park a truck on a portion of the highway because of mechanical failure, and the rules announced in the brief. However, the respondent did not park its truck on its side of the road, but attempted to reach a driveway on the left hand side of the highway, and, as a result thereof, left a snow plow attached to the truck protruding out into the highway. There were two men on the truck, they were both aware of the condition, because Geudtner testified that he particularly went to the front of the truck to see if the lights were burning. Even though he knew of this dangerous condition, he also left to seek help to have the truck removed.

There isn't any other conclusion from the facts that the Court can draw, but that the principal cause of the collision was the protrusion of the snow plow on the highway. This is corroborated by the fact that another automobile, other than the automobile in which the claimant was riding, also struck the truck, and that the proximate cause of the collision was due to the negligence of the respondent. The Court also concludes that there is no evidence of contributory negligence in the record on the part of the claimant.

There is no testimony in the record as to the negligence of the driver of the car in which claimant was riding. There is no evidence as to whether or not the car was being operated negligently. The undisputed facts in the record show that the car struck the plow. This was shown by the Departmental Report introduced by the respondent.

The claimant stated that the car was approximately fifty feet in front of the truck before he saw the truck, and he stated that he did not see any lights, and the car that he was riding in was traveling about thirty miles an hour.

In order to sustain respondent's position, it would have to be shown that the claimant saw the truck in time, and that there was danger in running into it, and that the claimant had an opportunity to see the truck before the driver of his car. The testimony would have to show that the claimant could have given a warning, and that the warning, if given, would have averted the accident. The failure of a guest in a car to warn a driver is not in and of itself contributory negligence. (*Bliss* v. *Knapp,* 331 App. 45; *Rhoden* v. *Peoria Creamery Co.,* 278 App. 452-465; *Lasko* v. *Meier,* 329 App. 5.)

The record is devoid of any negligence on the part of the driver. In fact, it can be assumed from the evidence in this record that the driver of the car did assume that if they saw a red flasher light that the truck would be operating in the right direction, and would not necessarily have to assume that some obstruction would be protruding from the truck into the highway. There is no dispute in the record but that the driver of the car was operating on a portion of the highway where he had a right to be. In fact the testimony shows that the plow was not only protruding into the highway, but was on an angle, and was down on the pavement.

The Court, therefore, concludes that the claimant is entitled to recover damages due to the negligence of the respondent, which was the proximate cause of the collision. The claimant introduced evidence as to his hospital bill and medical services for which no proper foundation was laid for its admission. However, there was no objection to this testimony, and it will, therefore, be necessary for the Court to consider it as competent. The evidence shows, without objection, that after the collision the claimant took sick, and was taken to the hospital where he remained for about a month, and was attended by a physician by the name of Dr. Harry Haber. The record shows that his hospital bill was $430.00, that his physician's bill was $189.00, and that he had a lacerated liver. All this testimony was admitted without objection. Claimant further testified that he lost eight (8) weeks of work, and that he earned $55.00 a week.

An award is entered in favor of the claimant in the amount of $1,200.00.